JONATHAN A. STIEGLITZ, ESQ. (SBN 278028)
jonathan.a.stieglitz@gmail.com
THE LAW OFFICES OF JONATHAN A. STIEGLITZ
11845 W. Olympic Blvd., Suite 800
Los Angeles, California 90064
Telephone:   (323) 979-2063
Facsimile:    (323) 488-6748

Attorney for Plaintiff
Daniel Torres

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Daniel Torres | Case No.  2:23-cv-01533-KK-SK |
| Plaintiff, | **PLAINTIFF'S RESPONSE TO DEFENDANT'S RULE 52 MOTION** |
| v. | |
| United Healthcare Insurance Co. and DOES 1-10, | Hearing Date: May 23, 2024 Time: 9:30 a.m. Courtroom: 3 |
| . | |

PLAINTIFF'S RESPONSE TO DEFENDANT'S RULE 52 MOTION

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................1

II.  LEGAL STANDARD .......................................................................................3

III. ARGUMENT ....................................................................................................6

  A. Defendant ignores, and recasts Plaintiff's demand ...........................................6

    1. Plaintiff seeks benefits entitled to him under the health plan. ...................6

      a. The Knox-Keene Act applies to Defendant .....................................7

    2. Defendant's assertion of "excessiveness" is a red herring.......................12

  B.  The applicable statute of limitations is 4 years ..............................................14

  C. Despite arguing a failure to exhaust administrative remedies, Defendant failed
to identify any exhaustion requirement under the plan.........................................16

  D. Even under an abuse of discretion standard Defendant cannot support that it
provided Plaintiff with benefits owed to him under the health plan....................18

V.  CONCLUSION ...............................................................................................19

# TABLE OF AUTHORITIES

**CASES**

*Bain v. United Healthcare Inc.*

   2016 U.S. Dist. LEXIS 116805 (N.D. Cal. Aug. 30, 2016)............................3, 4, 5

*Bell v. Blue Cross of Cal.*

   131 Cal.App.4th 211 (2005).............................................................................1, 7

*Brand Tarzana Surgical Inst. v. Aetna Life Ins. Co.*

   541 F. Supp. 3d 1031 (C.D. Cal. 2021) ..........................................................14, 16

*Conkright v. Frommert*

   559 U.S. 506, 521 (2010) ...................................................................................3

*Cty. of Monterey v. Blue Cross of Cal.*, 2020 U.S. Dist. LEXIS 25358

   (N.D. Cal. Feb. 12, 2020)...................................................................................18

*Mahlon D v. Cigna Health & Life Ins. Co.*

   291 F. Supp. 3d 1029 (N.D. Cal. 2018) ........................................................3, 4, 5

*Methodist Hosp. of S. California v. Blue Cross of California*

   2010 WL 11519453, at *6 (C.D. Cal. Apr. 9, 2010)...............................................9

*Moyer v. Metro. Life Ins. Co.*

   762 F.3d 503 (6th Cir. 2014)................................................................................15

*M.R. v. United Healthcare Ins. Co.*

   2024 U.S. Dist. LEXIS 36832 (S.D.N.Y. Feb. 29, 2024) ..........................................16

*Novick v. Metro. Life Ins. Co.*

   764 F. Supp. 2d 653 (S.D.N.Y. 2011)................................................................15, 16

*O'Rourke v. N. Cal. Elec. Workers Pension Plan*

   934 F.3d 993 (9th Cir. 2019)................................................................................18

*Prospect Med. Grp., Inc. v. Northridge Emergency Med. Grp.*

   45 Cal. 4th 497 (2009)........................................................................................1, 9

*Schmidt v. Found. Health*

   35 Cal.App.4th 1702 (1995)................................................................................10

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*

   770 F.3d 1282 (9th Cir. 2014)...................................................................17

*Talbot v. UnitedHealthcare Ins. Co.*

   2024 WL 847960 (C.D. Cal. Feb. 16, 2024)..............................................6

*Tapley v. Locals 302 & 612 of the Int'l Union of Operating Eng'rs-Employers Constr.*

   *Indus. Ret. Plan*

   728 F.3d 1134 (9th Cir. 2013)...........................................................2, 18

**STATUTES**

29 U.S.C. §1132(a)(1)(B) ..................................................................passim

29 U.S.C.S. § 1133 ....................................................................................14

29 C.F.R. § 2560.503-1 ........................................................................14, 15

California Insurance Code § 10110.6.....................................................3, 6

Cal. Health & Safety Code § 1345 ........................................................8, 9

California Health and Safety Code § 1343.................................8, 9, 10, 11

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendant United Healthcare Insurance Co.'s ("Defendant" or "United") opening brief glosses over the health plan's language, ignores its *own* written statements of indemnification to Plaintiff, and argues against the wrong standards. Defendant creates a strawman so that it may destroy it. But the strawman is not real, and Defendant fails to grapple with the actual issues before the Court.

Defendant's *California* plan, UHIC_0000168, states that Defendant will pay a negotiated amount or an amount permitted by law. UHIC_0000019. The *California* law directly on point, which addresses the payment to non-contracted out-of-network providers for emergency services, is the Knox-Keene Act. *Prospect Med. Grp., Inc. v. Northridge Emergency Med. Grp.*, 45 Cal. 4th 497, 504 (2009) ("As *Bell* explained, the Knox-Keene Act "compels for-profit health care service plans to reimburse emergency health care providers for emergency services to the plans' enrollees."). (quoting *Bell v. Blue Cross of Cal.*, 131 Cal. App. 4th 211, 217 (2005)).

Defendant's plan additionally states that it will pay amounts owed by Plaintiff—i.e. will indemnify Plaintiff—up to expenses that are "excessive." Defendant confirmed the same to Plaintiff in letters, stating that "Data iSight representative will work with [Medical Providers] to agree on the payment due," (UHIC_0000544-545), and telling Plaintiff "do not pay" Medical Providers for any amount over his copays, coinsurance, or deductible. UHIC_0000341, 345.

Defendant ignores each of these clear articulations of its obligations. Instead, Defendant argues that Medical Providers' *billed charges* are excessive, that the plan's listed contractual limitations expired, and that Plaintiff failed to exhaust administrative remedies. Each argument fails.

First, Defendant cannot ignore its obligation to Plaintiff by asserting that Medical Providers' bills are excessive. Even if they were excessive (they are not),

Defendant's obligation and Plaintiff's claim relates to Plaintiff's benefits under the plan and payment according to the plan, and not Medical Providers' full bill. As discussed further below, Defendant—under its own terms—was required to pay the amount up to and until an amount that is "excessive." Defendant does not even argue that it paid such an amount, only that the full bill ($99,000.00)[1] is excessive. But what about the $96,921.67 between the $99,000.00 Defendant claims is excessive and the $2,078.33 Defendant actually paid?

Second, Defendant argues a contractual limitations period, but ignores that in order to invoke a contractual limitations in the plan Defendant was required to provide notice to Plaintiff in its benefits' determination correspondence. It did not, and as such the limitations period does not apply.

Third, like Defendant's limitations period argument, Defendant argues Plaintiff failed to exhaust administrative remedies while ignoring that exhaustion is only required if set forth as a requirement in the plan. The plan has no such requirement.

Finally, Defendant argues that it should be allowed to make any determination it wishes and interpret the plan in any self-serving manner under an "abuse of discretion" standard. This is incorrect as discussed at length in Plaintiff's Legal Standard section of Plaintiff's Opening Brief. Pltf's Mot. 8:1-10:4. But even were an abuse of discretion standard to be applied, that does not permit Defendant to do whatever it wishes under claims of discretion. *See Tapley v. Locals 302 & 612 of the Int'l Union of Operating Eng'rs-Employers Constr. Indus. Ret. Plan*, 728 F.3d 1134, 1139 (9th Cir. 2013) ("The Court's review of the Trustees' interpretation is not without bite, however: 'a deferential standard of review does

---

[1] Plaintiff withdraws its arguments in connection with the office visit for $4,500.00.

not mean that the plan administrator will prevail on the merits.'") (quoting *Conkright v. Frommert*, 559 U.S. 506, 521 (2010)).

The pertinent inquiry in an ERISA [denial of benefits] analysis is whether Defendant's actions were proper under the plan. Defendant ignores this inquiry, and its complete failure to provide Plaintiff with the benefits owed to him under the plan. Defendant has failed to abide by its obligations to Plaintiff under the health plan and ERISA and its alleged defenses are unsupportable. Plaintiff respectfully requests that the Court allow the Parties to provide data supporting what a non excessive amount for the medical services is or order the matter remanded to the health plan to engage in this process as it should have done all along.

## II.   LEGAL STANDARD

As discussed at length in Plaintiff's opening brief, the standard of review here should be *de novo*, as any abuse of discretion language in the health plan is void. *See* California Insurance Code § 10110.6. Pltf's Mot. 8:1-10:4.

Defendant will argue that the language of California Insurance Code § 10110.6 does not apply to health benefits only to disability benefits. Defendant will rely on *Bain v. United Healthcare Inc.*, 2016 U.S. Dist. LEXIS 116805, at *15 (N.D. Cal. Aug. 30, 2016) to make this argument. However, the court in *Mahlon D v. Cigna Health & Life Ins. Co.*, 291 F. Supp. 3d 1029, 1031 (N.D. Cal. 2018) explained in great detail how California Insurance Code § 10110.6 applies to health benefits as well as disability benefits.

> Defendant's reading renders meaningless the explicit language in § 106(b) that health insurance is a disability insurance policy. A more coherent reading is that health insurance is a smaller subset of disability insurance that then further excludes particular *other* types of disability insurance: namely, disability insurance that pays benefits on a fixed benefit, cash payment only basis, such as

3

hospital indemnity, accident only, and specified disease
insurance. …

This interpretation is further bolstered by how the terms
health insurance and disability insurance are used
throughout the Code. At times, health insurance is
explicitly carved out from the more general definition of
disability insurance. For example, § 10111.2(a) imposes a
30-calendar-day period for payment of benefits under a
policy of disability insurance other than health insurance,
as defined in Section 106 . . . . Elsewhere in the Code,
other sections refer to health insurance by its definition as
disability insurance policies . . . that cover[] hospital,
medical, or surgical expenses. That other provisions
specifically mention health insurance by name
underscores that when the Legislature intended to limit a
provision solely to health insurance, rather than the
umbrella term disability insurance, it knew how to do
so. *See, e.g.*, Cal. Ins. Code §§ 10112.295 (identifying
levels of coverage and actuarial values for
nongrandfathered health insurance policies); 10198.6(a)
(defining "[h]ealth benefit plans" as "any group or
individual policy of health insurance, as defined in section
106 . . . .").

*Id.* at 1032-33 (cleaned up) (most citations omitted) (emphasis in original).

*Mahlon* continued to directly rebut an argument relying on *Bain*:

Defendant fails to explain its narrow interpretation in the
context of the entire Insurance Code, and instead relies
heavily on a single district court case, *Bain v. United*

*Healthcare Inc.* The Court respectfully disagrees with the
reasoning in *Bain*. There, the court did not consider
disability or health insurance in the context of the entire
Insurance Code. Instead, the court limited the definition
of disability insurance to disability *income* insurance,
citing several California state cases. However, under the
Insurance Code, disability insurance and disability
income insurance are not synonymous, and the definition
of health insurance in § 106(b) specifically excludes
disability income insurance as its own category, distinct
from the other excluded forms of disability insurance.
*See* Cal. Ins. Code § 799.01(i) (defining disability income
insurance as "insurance against loss of occupational
earning capacity arising from injury, sickness, or
disablement."); *see also id.* §§ 106(b)(2) and
(5). Moreover, the cases that the *Bain* court relied on
involved the meaning of "total disability" in two general
disability policies that provided insureds monthly income
"in the event of [their] total and permanent disability."
They did not rely on or interpret the definition of
"disability insurance" under the California Insurance
Code, and their analysis thus does not shed light on the
question at issue here.

*Id.* at 1032-33 (cleaned up) (most citations omitted) (emphasis in original).

Here, the health plan is a fully-funded (i.e. not a *self*-funded) ERISA plan and
it does not contain a choice of law provision. UHIC_0000168 ("your plan is fully
insured"). Further, the Plan sponsor KSEA is located in California. *Id.* ("El

5

Segundo, CA 90245"). California Insurance Code § 10110.6 applies, and the appropriate review is *de novo*.

**III.    ARGUMENT-**

**A. Defendant ignores, and recasts Plaintiff's demand.**

Defendant argues that Plaintiff demands Medical Providers' charges, and spends a significant portion of its brief arguing that Medical Providers' charges are "excessive." But this is a red herring, meant to only to inflame.

**1.   Plaintiff seeks benefits entitled to him under the health plan.**

Plaintiff filed this lawsuit for benefits under his health plan. As stated, the health plan requires Defendant's to pay in accordance with the following language:

> When Covered Health Services are received from a non-Network provider as a result of an Emergency or as arranged by us, Eligible Expenses are <u>an amount negotiated by us</u> or <u>an amount permitted by law</u>. <u>Please contact us if you are billed for amounts in excess of your applicable Coinsurance, Copayment or any deductible. We will not pay excessive charges or amounts you are not legally obligated to pay.</u>

UHIC_0000019 (colorization added).

Defendant concedes that it did not negotiate an amount[2] with Medical Providers (itself a violation of its express statements to Plaintiff, as discussed

---

[2] Defendant argues that it had no obligation to negotiate, and asserts reliance on "Judge Blumenthal's" [sic – Judge Blumenfeld's] decision in *Talbot v. UnitedHealthcare Ins. Co.*, 2024 WL 847960 (C.D. Cal. Feb. 16, 2024). However, *Talbot* does not support Defendants' assertions.

The health plan in *Talbot* stated that payment would be based on the greater of three options: a negotiation (<u>if</u> one took place), a percentage of Medicare, or a percentage of Defendant's in-network contracted rate for the same services. Both Medicare and a percentage of an in-network contracted rate are readily discernable

(Continued)

further below), and does not cite to *any* law to which its payment amount was permitted. Rather, Defendant argues that the directly on-point law—the Knox Keene Act governing payment of emergency services in California, the *precise* services to which the above *California*-based plan language relates—is inapplicable to it. Instead, Defendant argues that its arbitrary payment decision—based on its *own* decision to utilize "Data iSight" with a lower bound of 250% of Medicare—was not against the law. Def's Mot. 18:14-19:4.

According to Defendant, its *California*-based payment provision for emergency out-of-network services means that it can pay whatever it wants. That is as unreasonable as is it illogical.

In contrast to Defendant's unsupportable payment guarantee under the plan (the "whatever Defendant wants to pay" standard), California law expressly dictates how out-of-network emergency services *must* be paid. *Bell*, 131 Cal. App. 4th at 216, ("reimbursement of a claim for noncontract providers means health care service plans must pay the reasonable and customary value for the health care services"). Reasonable and customary/UCR is an industry-defined and industry-definite term. *See* Healthcare.gov, UCR (Usual, Customary and Reasonable) (May 10, 2024), https://www.healthcare.gov/glossary/UCR-usual-customary-and-reasonable/ (defining UCR).

a. *The Knox-Keene Act applies to Defendant.*

To determine whether an entity is subject to the Knox Keene Act, the appropriate question to ask is whether the entity is a health care service plan as defined by the Act:

_____

(Continued)

and calculable. In contrast, the current plan does not provide *any* discernable, concrete method of payment as argued by Defendant. The sole possible discernable payment method as the "amount permitted by law" is "reasonable, and customary" rate as demanded by the Knox-Keene Act. However, Defendant disclaims the Knox Keene Acts applicability.

7

(f) "Health care service plan" or "specialized health care service plan" means either of the following: (1) Any person who undertakes to arrange for the provision of health care services to subscribers or enrollees, **_or to pay for_** or to reimburse any part of the cost for those services, **_in return for a prepaid or periodic charge_** paid by or on behalf of the subscribers or enrollees.

Cal. Health & Safety Code § 1345(f)(1) (emphasis added).

Defendant is a health service plan under the Knox Keene Act because it, at minimum, pays for the cost of services, in return for periodic payments. First, the health plan is fully funded by Defendant. UHIC_0000168. This means that Defendant is the one responsible for paying for the cost of the services Plaintiff receives. Second, Plaintiff pays premiums (i.e. periodic payments) to Defendant to obtain the services provided by Defendant. UHIC_00000169 ("Benefits under the Plan are funded by the payment of Premium required by the group Policy."). The health plan defines premium as "**the periodic fee** required for each Subscriber and each Enrolled Dependents enrolled under the Policy." UHIC_0000114 (emphasis added).

Defendant does not dispute—because it cannot dispute—that **_it_** issued payments for medical services to Plaintiff (as well as other patients) or that **_it_** receives premium payments from Plaintiff (and others). Instead, Defendant makes three arguments about why it allegedly is not a health care service plan. But each of Defendant's arguments is irrelevant to the issue before the Court: whether Defendant is a health care service plan **_as defined by the Knox Keene Act_**. First, Defendant argues that cases have said that Defendant is not a health care service plan. Second, Defendant argues that Defendant cannot be a health care service plan because Defendant is not licensed with the Department of Managed Health Care. And, third, Defendant relies on Cal. Health & Safety Code § 1343(e)(1) to argue

that since Defendant is licensed with the Department of Insurance, Defendant cannot be a health care service plan.

First, there is no analysis in any of the cases cited by Defendant in which a plaintiff specifically argued that the defendant is a health care service plan, subject to the Knox Keene Act and alleges or provides facts as Plaintiff does here that the defendant receives premium payments from patients and issues the payment for those same patients to the medical providers who provide the patients with medical services.

Second, logically, just because a health care service plan needs to also get a license from the Department of Managed Health Care does not mean that Defendant does not fit into the definition of a health care service plan. *See Methodist Hosp. of S. California v. Blue Cross of California*, No. CV 09- 5612 GAF (JCX), 2010 WL 11519453, at *6 (C.D. Cal. Apr. 9, 2010) ("The Court is not persuaded that *Prospect's* reference to 'health care service plans,' encompasses only plans licensed by the Department of Managed Care."). Defendant's argument is just an "a then b fallacy" or an affirming the consequent. Further, the definition itself makes no mention whatsoever of the Department of Managed of Health Care. California Health and Safety Code § 1345. Medical Providers take no position on whether or not Defendant should or should not be obligated to get a license also from the Department of Managed Health Care. Medical Providers simply show that Defendant both reimburses for medical services, UHIC_0000168-169 and receives periodic premium payments for the services Defendant provides. UHIC_0000114. And, this makes Defendant a health care service plan.

Finally, section 1343 does not support Defendant's argument either. Section 1343 states:

> (a) This chapter shall apply to health care service plans and specialized health care service plan contracts as defined in subdivisions (f) and (o) of Section 1345…

(e) This chapter shall not apply to:

(1) a person organized and operating pursuant to a certificate issued by the Insurance Commissioner unless the entity is directly providing the health care service through those entity-owned or contracting facilities and providers, in which case this chapter shall apply to the insurer's plan and to the insurer…

The language of Section 1343(a) and Section 1343(e) under Defendant's interpretation are inconsistent. Defendant would necessarily assert that the Knox-Keene Act must not apply because Defendant operates pursuant to a certificate from the Insurance Commissioner. Defendant would make this assertion despite the absence of any limiting language such as the words "notwithstanding" or "even if". But, Defendant's unreasoned and unsubstantiated assumption is without legal support.

The key question is not whether Defendant is regulated by the Department of Insurance. The key question is simply whether or not Defendant falls into the definition of a health care service plan. California Health and Safety Code § 1343(a). As long as an entity is acting like a health care service plan, it makes little difference whether they are also licensed by the department of insurance. *See Delta Dental Plan of Cal. v. Mendoza*, 1996 WL 40264, at *8 (C.D. Cal. Jan. 3, 1996) ("Indeed, under the Knox-Keene Act, the Commissioner may not regulate insurance companies, *unless* the insurer also functions as a health care service plan.") (emphasis added).

In *Schmidt v. Found. Health*, 35 Cal.App.4th 1702, 1711 (1995), an insurance broker argued, like Defendant, that the Knox Keene Act did not apply to him because he was licensed by the Department of Insurance.

In asserting regulation 1300.46 is inapplicable to his case, plaintiff cites various parts of the regulatory language. First, he

contends he is not a person subject to the Act as outlined by the regulation because as a licensed insurance agent, he is exempt from the Act's provisions. In making this claim, plaintiff relies on section 1343, subdivision (e)(1), which provides that the Act does not apply to "[a] person organized and operating pursuant to a certificate issued by the Insurance Commissioner unless the entity is directly providing the health care service through those entity-owned or contracting health facilities and providers, in which case this chapter shall apply to the insurer's plan and to the insurer."

This provision is irrelevant to the present case. While plaintiff is a licensed insurance agent, he was not acting as such in soliciting clients for defendants' health plans. As defendants note, plaintiff essentially wore two hats in his professional life, one as an insurance agent and the other as a broker of health plans. In engaging in solicitation activities, plaintiff was not selling insurance or "operating pursuant to" his insurance license. The exemption of section 1343, subdivision (e)(1), is therefore inapplicable.

*Id*. at 1711.

Whether or not Defendant is acting pursuant to a certificate issued by the Department of Insurance is irrelevant to our analysis as Defendant just as easily can and is "wearing the hat" of a health care service plan. UHIC_0000114, 168-169 Defendant has not, because it cannot, demonstrate that it does not satisfy the requirements of being a health care service plan. *See id.*

### 2.  Defendant's assertion of "excessiveness" is a red herring.

Defendant spends five pages arguing that Medical Providers' billed charges (not even the relevant amount in controversy) are excessive, pointing to it as a multiplier over the Medicare rate, and even artificially inflating that number by first reducing the Medicare rate for Medical Providers' assistant surgeon rate to 16% in an attempt to shock the Court. But not only is Defendant wrong that Medical Providers' bills are excessive—they are in line with the "***reasonable* and customary rates**" for the billed CPT codes for out-of-network providers[3]—Defendant ignores the relevant inquiry even as to excessiveness.

Defendant, interpreting its own plan language, promised to indemnify Plaintiff and take [all necessary measures] to protect Plaintiff from financial liability. Defendant told Medical Providers ***four times*** that:

> We continue to expect that you will not bill our member for the balance except for any applicable copay, coinsurance and deductible in accordance with the member's benefit plan. ***We intend to take whatever measures are necessary to ensure that you do not hold our member responsible for that balance***.

UHIC_0000338, 349, 352, 355 (emphasis added). And Defendant told Plaintiff at least twice—in language noticeably absent from Defendant's brief, and referenced only as allegedly similar language—that:

> You should not be receiving a bill from this provider except for what is required under your United Healthcare

---

[3] For example, the reasonable and customary rate for these codes is $23,798.00 in lower cost-of-living areas whose data primarily reflects out-of-network provider charges. *See www.fairhealthconsumer.org/medical/results* [Fair Health for geozip 076, NJ]. It therefore is axiomatic that the Medical Providers' charges—in line with those reflected as "reasonable" (part of "reasonable and customary")—are not excessive.

plan (e.g. copay, coinsurance or deductible). If you do receive a bill for any additional amount over your copay, coinsurance or deductible, ***do not pay***, and contact ALPANA MATHURIA at 424-301-9300 extn-500-2109 or email: amathuri@uhc.com and reference the case number above, regarding this issue and any other questions concerning this letter.

UHIC_0000341, 345 (emphasis in original).

Perhaps most significantly, Defendant then sent another letter to Plaintiff telling him that a "Data iSight representative will work with [Medical Providers] to agree on the payment due." UHIC_0000544-545. Meaning, Defendant told Plaintiff that Defendant would negotiate with Medical Providers and in so doing indemnify Plaintiff.

The health plan is clear that the cap on this indemnification is an amount that would be "excessive."  Therefore, the relevant inquiry is whether an amount to be paid is "excessive"—i.e. that Defendant will pay ***up to*** what is excessive—and not whether the full bill is excessive.  Defendant does not argue that an amount more than it paid (but lower than full bill charges) is excessive.  Yet that amount—the amount just under what is excessive—is precisely what Defendant was obligated to pay under the terms of the plan.  Defendant does not even engage in this inquiry or suggest an amount between its payment amount of $1,791.65 and the billed $50,000 for the primary surgeon, or its payment amount of $286.68 and the billed $49,000 for the assistant surgeon, at which charges become "excessive."

Defendant's failure—which it omits from its brief—is underscored by the record's evidence that Medical Providers made an offer to settle for less than billed charges, and that Defendant did not counter. UHIC_0000549 ("The patient was seen in the emergency room and was diagnosed with acute cholecystitis. Your member's claim processed and paid $1,791.65. The provider is willing to negotiate

a fair allowable amount and accept $37,500 for the emergency procedure that was performed in lieu of balance billing the patient.").

Defendant promised Plaintiff that it (through Data iSight) would take all necessary actions on his behalf to prevent Plaintiff from incurring financial liability. UHIC_0000341, 345; UHIC_0000338, 349, 352, 355; UHIC_0000544-545. But it didn't. Defendant represented that it would pay up to what is "excessive." *Id.* But it didn't.  Defendant did nothing.

Defendant's failures deprived Plaintiff of the benefits owed to him under the health plan.

### B. The applicable statute of limitations is 4 years.

"In the absence of a contractual limitations period, the statute of limitations for an ERISA action to recover benefits is four years." *Brand Tarzana Surgical Inst. v. Aetna Life Ins*. Co., 541 F. Supp. 3d 1031, 1038 (C.D. Cal. 2021).

Defendant argues that the health plan has a 3-year and 90-day limitations period, and that Plaintiff therefore allegedly missed the deadline to file suit by about 8 weeks. Def's Mot. 17:8-14. But while Defendant spends significant time arguing that contractual limitations periods can only be valid if reasonable, it ignores the threshold question. A contractual limitations period under ERISA is *only* valid if the ERISA-plan provides proper notice. *See Brand*, 541 F. Supp. 3d at 1038. ("[Insurer] did not give adequate notice, and there was no way for [plaintiff] to determine when the contractual time period would be triggered.").

The specific notice requirement in 29 U.S.C.S. § 1133 is set forth in 29 C.F.R. § 2560.503-1.  According to the Regulation, when a plan denies a claim in part or full, it must—along with the provided denial or explanation of benefits— include:

> A description of the plan's review procedures and ***the time limits*** applicable to such procedures, ***including a statement of the claimant's right to bring a civil action***

under section 502(a) of the Act following an adverse

benefit determination on review[.]

*Id.* (emphases added). Courts across all circuits have found that this language requires an entity like Defendant under ERISA to expressly identify *the time to bring suit* under the health plan, and if it does not, any alleged contractual time limitation is waived:

> The regulations require that benefit denial letters provide:
> "[a] description of the plan's review procedures and the time limits applicable to such procedures, *including* a statement of the claimant's right to bring a civil action . . . following an adverse benefit determination on review." 29 C.F.R. § 2560.503-1 (emphasis added). The claimant's right to bring a civil action is expressly included as a part of those procedures for which applicable time limits must be provided. Cases of out sister courts support this conclusion.

*Moyer v. Metro. Life Ins. Co.,* 762 F.3d 503, 505 (6th Cir. 2014) (collecting cases) (emphasis in original).

A factually similar situation arose in *Novick v. Metro. Life Ins. Co.*, 764 F. Supp. 2d 653 (S.D.N.Y. 2011) in which the plan beneficiary did not challenge the reasonableness of the health plan's limitation period, as the reasonableness of the period was immaterial. *See id.* at 659 ("that the six-month limitations period was unreasonable; nor does she argue for excusal from the limitations period, as she might have, due to equitable principals such as estoppel or equitable tolling"). Rather, the beneficiary countered the insurer's alleged defense by pointing out that the insurer had failed in its notice obligations under ERISA. *See id.* at 660 ("that [insurer] violated ERISA's requirements by not expressly stating the civil action limitations period in its letter upholding its termination decision and denying her

appeal"). The court found the contractual limitations period was waived for failure to provide proper notice. *See id.* ("The Court finds that [insurer's] *initial* benefits termination letter violated the ERISA regulations by failing to include the applicable time limit for bringing a civil action pursuant to Section 1132(a) after an adverse benefits decision on appeal. Because of that violation, New York's six-year statute of limitations governed the action and Novick's claim to STD benefits is timely.").

As in *Novak*, Defendant failed in its notice obligation. Defendant has not shown or provided any documentation evidencing notice. Def's Mot. 16:10-18:4 (no reference to any notice). As a result, Defendant's contractual limitations defense is waived. *See, e.g.*, *M.R. v. United Healthcare Ins. Co.*, 2024 U.S. Dist. LEXIS 36832, at *6 (S.D.N.Y. Feb. 29, 2024) ("Defendants' regulatory violation waived the contractual limitations period"); *Brand*, 541 F. Supp. 3d at 1038.[4]

**C. Despite arguing a failure to exhaust administrative remedies, Defendant failed to identify any exhaustion requirement under the plan.**

It is well-established that the requirement for exhaustion of ERISA appeals only exists if the health plan *itself requires* exhaustion and *says so explicitly*:

> A number of our sister circuits have held that a claimant need not exhaust when the plan does not require it. We arguably adopted the same rule in Nelson v. EG & G Energy Measurements Group, Inc., 37 F.3d 1384 (9th Cir. 1994), ***and we do so explicitly today***.

---

[4] Plaintiff need not make any other showing to negate Defendant's contractual limitations argument. For example, "equitable tolling is not 'an obstacle, or even relevant." *M.R. v. United Healthcare Ins. Co.*, 2024 U.S. Dist. LEXIS 36832, at *7.

1   *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d

2   1282, 1299 (9th Cir. 2014) (quotations omitted) (emphasis added).

3        Here, the plan says *nothing* suggesting—let alone expressly requiring—

4   exhaustion.  The full text of the plan as related to appeals reads:

5          **How to Request an Appeal**

6          If you disagree with either a pre-service request for

7          Benefits determination, post-service claim determination

8          or a rescission of coverage determination, you can contact

9          us in writing to formally request an appeal.

10         Your request for an appeal should include:

11

12      •   The patient's name and the identification number from the

13         ID card.

14      •   The date(s) of medical service(s).

15      •   The provider's name.

16

17      •   The reason you believe the claim should be paid.

18      •   Any documentation or other written information to

19         support your request for claim payment.

20           Your first appeal request must be submitted to us

21         within 180 days after you receive the denial of a pre-

22         service request for Benefits or the claim denial.

23  UHIC_000085-86.  The plan says that one "*can*" appeal, not that one must.  And it

24  says nothing at all about an appeal being a prerequisite for a lawsuit:

25         **Legal Actions**

26         No action at law or in equity shall be brought to recover

27         on this Policy prior to the expiration of 60 days after

28         written proof of loss has been furnished in accordance

1   with the requirements of this Policy.  No such action shall
2   be brought after the expiration of three years after the
3   time written proof is required to be furnished.

4   UHIC_0000102.

5   As the health plan does not have a requirement that Plaintiff have exhausted
6   Plaintiff's appeals Defendant cannot seek to prevail based on a failure to exhaust—
7   exhaustion was never needed at all.

**D. Even under an abuse of discretion standard Defendant cannot support that it provided Plaintiff with benefits owed to him under the health plan.**

Were the Court to entertain an abuse of discretion standard of review (the Court should not), the Ninth Circuit provides a clear method for conducting the review which would not alter the analysis above.

[U]nder Ninth Circuit precedent, there are three ways in which a plan administrator's interpretation of provisions of an ERISA plan may constitute an abuse of discretion. "First, it is an abuse of discretion to construe provisions of a plan in a way that clearly conflicts with the plain language of the Plan." "Second, it is an abuse of discretion to interpret a provision in a way that renders nugatory other provisions of the Plan." "Third, it is an abuse of discretion to give an interpretation that lacks any rational nexus to the primary purpose of the Plan."

*Cty. of Monterey v. Blue Cross of Cal.*, 2020 U.S. Dist. LEXIS 25358, at *33-34 (N.D. Cal. Feb. 12, 2020) (quoting to *Tapley*, 728 F.3d at 1139 and *O'Rourke v. N. Cal. Elec. Workers Pension Plan*, 934 F.3d 993, 1001 (9th Cir. 2019)) (cleaned up).

Defendant violates all three of these in ignoring the language of the health plan which states: "Please contact us if you are billed for amounts in excess of your applicable Coinsurance, Copayment or any deductible. We will not pay excessive charges or amounts you are not legally obligated to pay."

18

First, Defendant does not bother to address this specific language from the health plan and what it requires Defendant to do other than to say it requires Defendant not to pay Medical Providers' full billed amount. Second, as a result, Defendant renders the language nugatory. This is despite the fact that it is clear that all of Defendant's correspondence with Plaintiff and Medical Providers is specifically tied to this language of indemnification. Third, Defendant's interpretation that it can just pay whatever it chooses (here 250% of Medicare) does not comport with the language of the health plan which requires Defendant to pay up to an amount that is not excessive.

Under the appropriate *de novo* standard or the abuse of discretion standard, Defendant failed to provide Plaintiff with the benefits owed under the Plan.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court enter judgment in Plaintiff's favor and to order the Parties to provide data supporting what is not an "excessive" amount or order Defendant to pay a not "excessive" amount for the services provided.[5]

DATED:  May 10, 2024

LAW OFFICE OF JONATHAN A. STIEGLITZ

BY: /s/Jonathan A. Stieglitz
　　　Jonathan A. Stieglitz
　　　Attorney for Daniel Torres.

.

---

[5] Plaintiff concedes that Plaintiff has the burden to show that Plaintiff was denied Plaintiff's benefits owed under the health plan. Plaintiff has shown that Defendant denied Plaintiff a benefit under the health plan as Defendant did not pay an amount that was up to just below an excessive amount. Defendant simply paid whatever it chose. This satisfies Plaintiff's burden. Plaintiff need not provide a specific dollar amount owed by Defendant to demonstrate that Defendant denied Plaintiff benefits. And, Plaintiff certainly should not have this obligation when the health plan itself does not speak in specific dollar amounts.

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Plaintiff Daniel Torres certify that this brief contains 5,329 words, which complies with the word limit of L.R. 11-6.1.


Dated: May 10, 2024                    Respectfully submitted,


                                       /s/ Jonathan A. Stieglitz
                                       Jonathan A. Stieglitz
                                       Attorney for Daniel Torres

1

## **CERTIFICATE OF SERVICE**

2        I hereby certify that on May 10, 2024, I caused a copy of the foregoing to be

3  filed electronically with the Clerk of the District court using the CM/ECF system,

4  which sent notification of such filing to all parties registered to receive notice via

5  that service.

6

7

8                   /s/ Jonathan A. Stieglitz

9                   Jonathan Stieglitz

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28