UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 23-1533-KK-SKx** | Date: | June 28, 2024 |
|---|---|---|---|
| Title: | *Daniel Torres, et al. v. United Healthcare Insurance Co., et al.* | | |

Present: The Honorable   KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Noe Ponce | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:    (In Chambers) Order DENYING Plaintiff's Motion for Judgment [Dkt. 58] and GRANTING Defendant's Motion for Judgment [Dkt. 60]**

## I.
## INTRODUCTION

On June 13, 2023, plaintiffs Daniel Torres ("Torres"), Emsurgcare, and Emergency Surgical Assistant ("ESA") filed the operative First Amended Complaint ("FAC") against defendant United Healthcare Insurance Company ("Defendant") seeking to recover benefits and enforce rights under the Employee Retirement Income Security Act of 1974 ("ERISA").  ECF Docket No. ("Dkt.") 30.

On April 12, 2024, plaintiff Torres[1] ("Plaintiff") and Defendant each filed a Motion for Judgment on the Administrative Record under Federal Rule of Civil Procedure 52 ("Rule 52"). Dkts. 58, 60.  The Court finds these matters appropriate for resolution without oral argument.  See FED. R. CIV. P. 78(b); L.R. 7-15.  For the reasons set forth below, Plaintiff's Motion for Judgment is **DENIED**, and Defendant's Motion for Judgment is **GRANTED**.

///

---

[1] On January 22, 2024, pursuant to the parties' stipulation, the Court dismissed the quantum meruit claim brought by plaintiffs Emsurgcare and ESA, medical providers that performed a medical operation on plaintiff Torres in 2019.  Dkt. 47.  Accordingly, the sole claim in this matter is plaintiff Torres's claim for recovery of benefits under ERISA.  See dkt. 30 at 10-11.

# II.
# PROCEDURAL HISTORY

On January 27, 2023, plaintiffs Torres, Emsurgcare, and ESA filed a Complaint against defendant Karl Storz Endoscopy-America, Inc. ("KSEA") in Los Angeles County Superior Court. Dkt. 1-1 at 4-15. As alleged in the Complaint, defendant KSEA is Plaintiff's employer and the sponsor of a Welfare Benefit Plan ("Plan") through which Plaintiff received health benefits and insurance. Compl. ¶ 10. At the time Plaintiff filed the Complaint, Plaintiff believed the Plan was self-funded by KSEA. See Dkt. 28.

On March 1, 2023, the action was removed to this Court. Dkt. 1.

On June 13, 2023, pursuant to the parties' stipulation, the Court issued an Order dismissing defendant KSEA and granting plaintiffs Torres, Emsurgcare, and ESA leave to file an amended complaint naming United Healthcare Insurance Co. as a defendant. Dkts. 28, 29. Defendant United is the Plan's Claims Fiduciary and Plan Administrator with KSEA. Dkt. 67-1 at 170 ("Your employer and [Defendant] share responsibility for administering the [P]lan."); id. at 98 ("We help finance or administer the Enrolling Group's Benefit plan in which [the covered individual] [is] enrolled."). On the same date, plaintiffs Torres, Emsurgcare, and ESA filed the operative FAC against Defendant, raising the following claims:

(1) **Cause of Action One:** Quantum meruit, brought by Emsurgcare and ESA ("Medical Providers"); and
(2) **Cause of Action Two:** Recovery of benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B), brought by Plaintiff.

Dkt. 30.

On July 13, 2023, Defendant filed an Answer to the FAC. Dkt. 32.

On January 22, 2024, pursuant to the parties' stipulation, the Court dismissed plaintiffs Emsurgcare and ESA's quantum meruit claim. Dkts. 46, 47.

On March 1, 2024, in light of the dismissal of the quantum meruit claim, the Court issued an Order vacating the May 13, 2024 Final Pretrial Conference and May 28, 2024 jury trial.[2] Dkt. 50. On March 7, 2024, the Court issued an Order setting a deadline of April 12, 2024 for the parties to file simultaneous cross-motions for judgment pursuant to Rule 52. Dkt. 52.

On March 13, 2024, Plaintiff filed a Motion for leave to amend the FAC. Dkt. 53. Plaintiff sought leave to amend the FAC to raise a breach of fiduciary duty claim against Defendant premised upon its alleged misrepresentations that it "would negotiate with [Emsurgcare and ESA] to resolve

---

[2] Plaintiff is not entitled to a jury trial on his remaining Second Cause of Action under ERISA, and, in assessing claims brought pursuant to ERISA's civil enforcement provisions, courts are generally limited to a review of the administrative record. See Thomas v. Or. Fruit Prods. Co., 228 F.3d 991, 996 (9th Cir. 2000); Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 970 (9th Cir. 2006).

Plaintiff's medical bills," and Plaintiff need "not pay or resolve his own medical bill[s]." Dkt. 53-2, Proposed Second Am. Compl., ¶¶ 60-62. On April 11, 2024, the Court denied Plaintiff's Motion for leave to amend, finding Plaintiff failed to establish good cause to amend the Court's Scheduling Order to extend the deadline to allow Plaintiff to file an amended complaint.[3] Dkt. 57.

On April 12, 2024, Plaintiff and Defendant filed Cross-Motions for Judgment on the Administrative Record under Rule 52. Dkts. 58, 60, 67-2. Defendant filed the Administrative Record on the same day.[4] Dkts. 59-1, 67-1.

Plaintiff argues Defendant improperly denied Plaintiff benefits owed under the Plan. Dkt. 58. First, Plaintiff argues a de novo standard of review applies to Plaintiff's ERISA claim. Id. at 13-15. Second, Plaintiff argues Defendant failed to provide benefits in accordance with the Plan and as required by California law by (1) failing to negotiate with Medical Providers an appropriate amount to pay for the services Plaintiff received; (2) failing to keep Plaintiff out of the billing dispute with Medical Providers; (3) refusing to pay the full amount billed by Medical Providers when there is no evidence that the amount billed is excessive; and (4) failing to fulfill its fiduciary obligations to Plaintiff. Id. at 15-21.

Defendant argues Plaintiff's claims have properly been paid pursuant to the terms of Plaintiff's ERISA Plan. Dkt. 67-2. First, Defendant argues an abuse of discretion standard applies to Plaintiff's ERISA claim. Id. at 18. Second, Defendant argues Plaintiff's ERISA claim fails because (1) it is time-barred by the Plan's three-year limitation period on legal actions to recover benefits; (2) Defendant did not abuse its discretion in the amount and rate it selected to reimburse Plaintiff's medical claims; and (3) Plaintiff failed to exhaust the administrative appeal procedure under the Plan for the medical claims for which he seeks additional reimbursement. Id. at 6-7, 19-28.

---

[3] To the extent Plaintiff requests the Court reconsider its April 11, 2024 Order to allow for consideration of its claim for breach of fiduciary duty, Plaintiff fails to establish reconsideration is warranted. See dkt. 58 at 9 n.4, 20-21. A motion for reconsideration "is an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." Feltzs v. Cox Commc'ns Cal., LLC, 562 F. Supp. 3d 535, 539 (C.D. Cal. 2021) (internal quotation marks omitted). A motion to reconsider is governed by a district's local rules. In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig., 966 F. Supp. 2d 1031, 1036 (C.D. Cal. 2013) ("Motions for reconsideration are governed by the Local Rules of this district."). Local Rule 7-18 permits a motion for reconsideration "only on the grounds of (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered." Here, Plaintiff fails to establish a motion to reconsider is warranted under subsections (a), (b), or (c). Thus, Plaintiff's request to reconsider the Court's April 11, 2024 order is **DENIED**.

[4] On April 12, 2024, Defendant filed a Joint Application pursuant to Local Rule 79-5.1 to file under seal portions of (1) the Administrative Record, dkt. 67-1, and (2) Defendant's Motion for Judgment, dkt. 67-2. Dkts. 66, 67. On June 28, 2024, the Court granted Defendant's Application to Seal. Dkt. 81. Docket citations for the Administrative Record and Defendant's Opposition are to the sealed versions, Dkt. Nos. 67-1 and 67-2, respectively.

On May 10, 2024, Plaintiff and Defendant filed their respective Oppositions.  Dkts. 78, 79.

These matters, thus, stand submitted.

## III.
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

"In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately." FED. R. CIV. P 52(a)(1).  Under Rule 52, "the court conducts a bench trial on the record, evaluating the persuasiveness of conflicting testimony and deciding which is more likely true."  Sanchez v. ExxonMobil Med. Plan, No. 2:19-CV-09943-FWS-AGRx, 2022 WL 17814645, at *11 (C.D. Cal. Dec. 5, 2022) (citing Kearney v. Standard Ins. Co., 175 F.3d 1084, 1094-95 (9th Cir. 1999)).

**A.   FINDINGS OF FACT**

On August 30, 2019, Plaintiff received emergency treatment from Medical Providers.  Dkt. 67-1 at 261-262, 297.  At the time, Plaintiff was a member of the KSEA Plan, which is a "fully insured" employee health and welfare benefits plan, "[r]egulated by[ the] California Department of Insurance."  Id. at 33, 170.  Under the Plan, Medical Providers are "non-Network providers." Id. at 262, 298.  The Plan's Group Policy specifically advised that Defendant's "health plan has a significant Out-of-Pocket Maximum," and thus, "[a] Covered Person may have to pay substantial amounts of his or her money for medical expenses, even if the Sickness or Injury is serious."  Id. at 425.

### 1.   Defendant Is the Plan's Claims Fiduciary

KSEA, Plaintiff's employer, is the Plan Sponsor and Named Fiduciary.  Id. at 170.  KSEA delegated authority to Defendant to be the Plan's Claims Fiduciary.  Id.  Under the terms of the Plan, Defendant, as a Plan Fiduciary, "ha[s] discretionary authority to interpret the terms of the Plan and to determine eligibility for benefits in accordance with the terms of the Plan."  Id.  The Plan further instructs "[a]ny interpretation or determination made pursuant to such discretionary authority shall be given deference and be legally binding on all parties and subject to review by a legal authority only to the extent the decision was arbitrary and capricious."  Id.

#### a.   Reimbursement for Emergency Services Provided by a Non-Network Provider According to the Terms of the Plan

Under the terms of the Plan, if a covered individual "receive[s] Covered Health Services from a non-Network provider," the individual is "responsible for requesting payment from [Defendant]." Id. at 84.  "Written notice of a claim must be furnished to [Defendant] within 20 days after a covered loss occurs or begins, or as soon thereafter as reasonably possible."  Id.  "Written proof of loss must be furnished to [Defendant] within 90 days after the date of such loss."  Id.

If a covered individual receives Covered Health Services "from a non-Network provider as a result of an Emergency," the individual will be reimbursed for "Eligible Expenses."  Id. at 13.  "Eligible Expenses are an amount negotiated by [Defendant] or an amount permitted by law." Id. at

28.  Defendant "will not pay excessive charges or amounts [a covered individual is] not legally obligated to pay." Id.  Additionally, "[Defendant] will not pay Benefits" for any "[c]harges in excess of Eligible Expenses[.]" Id. at 64, 74.  Benefits are "payment[s] for Covered Health Services that are available under the [Plan]." Id. at 107.

Defendant determines benefits according to its reimbursement policies.  Id. at 38.  Defendant's reimbursement policies are developed "in accordance with one or more of the following methodologies," including those "indicated in the most recent edition of the Current Procedural Terminology (CPT)," "reported by generally recognized professionals or publications," "used for Medicare," and "determined by medical staff and outside medical consultants pursuant to other appropriate sources or determinations that [Defendant] accept[s]." Id. at 38-39.

> **b.     Challenging Adverse Determinations According to the Terms of the Plan**

If a covered individual receives an Adverse Benefits Determination, the individual "may file a formal appeal." Id. at 87.  An Adverse Benefits Determination includes "a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a Benefit[.]" Id.  An appeal "must be submitted to [Defendant] within 180 days after [the covered individual] receive[s] the . . . claim denial." Id. at 88.

With respect to legal actions, the Plan prohibits a covered individual from bringing any "action at law or in equity . . . to recover on [the Plan] prior to the expiration of 60 days after written proof of loss has been furnished in accordance with the requirements of [the Plan]." Id. at 104.  Additionally, the Plan prohibits a covered individual from bringing any action "after the expiration of three years after the time written proof is required to be furnished." Id.

> **2.     Plaintiff's Medical Procedure, the Claims for Payment, and the Amount Paid by Defendant**

On August 30, 2019, Plaintiff received emergency treatment from Medical Providers.  Id. at 261-262, 270, 273, 290, 293, 297.  Medical Providers submitted claims to Defendant to obtain payment for the medical services provided to Plaintiff.  Id. at 273, 290, 293.  Emsurgcare submitted a claim for $50,000 for a primary surgeon.  Id. at 297.  ESA submitted a claim for $49,000 for an "Assistant Surgeon." Id. at 262.  Emsurgcare also submitted a claim for $4,500 for a Hospital Visit, using CPT code 99223 (Initial Hospital Inpatient or Observation Care).  Id. at 297.

Defendant used two reimbursement policies to process reimbursement amounts to ESA and Emsurgcare: (1) the Assistant-at-Surgery-Services Policy; and (2) the Procedure and Place of Service Policy, Professional.  Id. at 418-421, 455-457.  Under the Assistant-at-Surgery Policy, reimbursement for assistant surgeon claims are 16% of the amount reimbursable for the primary surgeon.  Id. at 419.  Under the Procedure and Place of Service Policy, services for certain CPT codes will only be reimbursed when performed in "an appropriate place of service," as defined by the policy.  Id. at 455-457.

On October 21, 2019, Plaintiff received an Explanation of Benefits Statement ("EOB") from Defendant for medical services provided on August 30, 2019 by ESA.  Id. at 260-269.  The EOB explained the August 30, 2019 medical service "was rendered by an out-of-network provider."

Id. at 262.  The EOB noted, for the deductible, copay, co-insurance, and non-covered amounts, Plaintiff owed $0.00 to ESA.  Id.  The EOB instructed Plaintiff, "If you're asked to pay more than the deductible, copay and coinsurance amounts shown, please call Data iSight . . . .  They will work with the provider on your behalf."  Id.  The EOB further provided Plaintiff with instructions on filing an appeal of any adverse determination regarding "contractual relationships, coverage, payment or reimbursement for health care services," including that an appeal must be filed within 180 days of the receipt date of the adverse decision notice."  Id. at 263.  With respect to ESA, the EOB instructed, "Please do not bill the patient above the amount of deductible, copay and coinsurance applied to this service.  If you have questions about the reimbursement[,] contact Data iSight."  Id. at 262.  Defendant additionally sent a letter to Plaintiff, informing Plaintiff that if Medical Providers bill Plaintiff for more than what was shown on Plaintiff's EOBs, Plaintiff should contact Data iSight, and a representative will work with the Medical Provider to agree on the payment due.  Id. at 459.

On October 29, 2019, Defendant sent a Provider Remittance Advance ("PRA") to ESA noting it would pay $286.68 of the $49,000 billed for the Assistant Surgeon.[5]  Id. at 273.  This amount was 16% of the amount paid to the primary surgeon from Emsurgcare detailed below.  Dkt. 67-2 at 14.

On December 10, 2019, Defendant sent a second letter to Plaintiff informing Plaintiff that if Medical Providers bill Plaintiff for more than what was shown on Plaintiff's EOBs, Plaintiff should contact Data iSight, and a representative will work with the Medical Provider to agree on the payment due.  Dkt. 67-1 at 461.

On December 12, 2019,[6] Defendant sent a PRA to Emsurgcare noting it would pay $1,791.65 of the $50,000 billed for the primary surgeon.  Id. at 290.  This amount was 250% of the Medicare rate.  Dkt. 67-2 at 13.

On December 17, 2019, Defendant sent a PRA to Emsurgcare noting it would pay $0 of the $4,500 billed for what was designated as a hospital visit.  Dkt. 67-1 at 293.  According to the PRA,

---

[5] In calculating the applicable reimbursements, Defendant relied on the "Outlier Cost Management Program" ("OCM Program") for handling out-of-network care and Defendant's two reimbursement policies (1. the Assistant-at-Surgery-Services Policy; and 2. the Procedure and Place of Service Policy, Professional).  Dkt. 67-2 at 12-14.  Under the OCM Program, Defendant "receives a recommended reimbursement rate from a third-party pricing service, Data iSight."  Id. at 13.  "To ensure compliance with applicable law, . . . OCM sets a floor for the reimbursement of out-of-network emergency services" of no less than 250% of the Medicare rate.  Id.; dkt. 67-1 at 470.  Thus, under the Plan, out-of-network emergency services are paid at either the amount set by Data iSight or 250% of Medicare, whichever is higher.  Dkt. 67-2 at 12-14.  Doctors and providers may negotiate these rates if they feel the rate is too low.  Id.

[6] On November 10, 2019, Defendant sent a letter to Emsurgcare informing the provider Defendant had requested information needed to process Plaintiff's claim, but had not received a response.  Dkt. 67-1 at 276-277.

"the procedure code/type of bill is inconsistent with the place of service" and the "service or item is not reimbursable in this place of service."[7]  Id.

On December 24, 2019, Plaintiff received an EOB from Defendant for medical services provided by Emsurgcare.  Id. at 296-304.  Similar to the October 21, 2019 EOB for ESA, the EOB explained the medical services were provided by an out-of-network provider; noted Plaintiff owed $0.00 to Emsurgcare for the deductible, copay, co-insurance, and non-covered amounts; and instructed Plaintiff how to file an appeal and what to do if asked by Emsurgcare to pay more than the deductible, copay, and coinsurance.  Id.  The EOB also instructed Emsurgcare, "Don't bill the patient above the amount of deductible, copay and coinsurance applied to this service."  Id. at 298.

On December 20, 2019, Data iSight sent a Letter of Agreement ("LOA") to ESA to accept $286.68 as payment for the services provided to Plaintiff.  Id. at 463-464.  On January 14, 2020, Data iSight sent a LOA to Emsurgcare for $1,791.65 for the services provided to Plaintiff.  Id. at 465-467.

From December 2019 to February 2020, Medical Providers attempted to negotiate their claims over the phone with Defendant, but were unsuccessful.  Id. at 468-469.

On or about January 22, 2021, Emsurgcare sent an appeal to Defendant regarding its claim denial – which reimbursed only $1,791.65 of Emsurgcare's $50,000 claim – arguing Defendant wrongfully processed Emsurgcare's claim for services provided to Plaintiff.  Id. at 196-201.  On or about that same day, ESA also sent an appeal to Defendant regarding its claim denial – which reimbursed only $286.68 of ESA's $49,000 claim – arguing Defendant wrongfully processed ESA's claim for services provided to Plaintiff.  Id. at 202-207.  Both appeal letters stated Plaintiff was being billed the remaining balance for services – totals of $48,208.35 and $48,713.32, respectively.  Id. at 196, 202.

On January 29, 2021, Defendant wrote to Emsurgcare and ESA stating, "You asked us to take another look at our initial decision [regarding the claim for Plaintiff].  We have completed our review and confirmed that the claim was processed correctly.  As a result, we are unable to issue any further payment."  Id. at 308, 310.  According to the letters, "[T]his decision [was] made" because "[t]he time frame you have to file an appeal has passed."  Id.  The letters instructed, "If you don't agree with our decision, you may appeal on the member's behalf with their signed authorization."  Id.

On an unknown date prior to February 20, 2021, Emsurgcare filed an appeal.  See id. at 320.  On February 20, 2021, Defendant responded and informed Emsurgcare and ESA that the appeal could not be processed without written authorization from Plaintiff.  Id. at 320-322.  No written authorization was ever submitted by Emsurgcare or ESA.

---

[7] Per Defendant, under the Procedure and Place of Service Policy, a bill for CPT code 99223 (Initial Hospital Inpatient or Observation Care) "is only reimbursable after the patient is actually admitted to a hospital and is seen as an inpatient, not when they are seen in the emergency room."  Dkt. 67-2 at 16.

On July 21, 2021 and July 26, 2021, Defendant informed Medical Providers via letter that they "have charged a higher amount than what is typically charged by other health care providers for [the services provided to Plaintiff]." Id. at 336, 343. Defendant invited Medical Providers to "submit medical records in an attempt to demonstrate that the service was extraordinarily complicated or difficult and warrants" the requested reimbursement amount. Id.

Around that same time, Defendant also sent a letter to Plaintiff informing Plaintiff of the higher charges from Medical Providers. Id. at 339. Defendant informed Plaintiff, "You should not be receiving a bill from [Medical Providers] except for what is required under your United Healthcare plan (e.g. copay, coinsurance or deductible)." Id. Defendant instructed, "If you do receive a bill for any additional amount over your copay, coinsurance or deductible, do not pay, and contact [a representative with Defendant][.]" Id.

On July 28, 2022, Medical Providers billed Plaintiff for the unpaid balance of his medical procedure – totaling $101,421.67. Dkt. 58 at 6, 21.

Plaintiff does not appear to have ever filed an appeal of the amounts Defendant reimbursed.

**B.    CONCLUSIONS OF LAW**

Under 29 U.S.C. § 1132(a)(1)(B) ("Section 1132(a)(1)(B)"), beneficiaries and plan participants may bring a civil action "to recover benefits due to [them] under the terms of [their] plan, to enforce [their] rights under the terms of the plan, or to clarify [their] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). A plaintiff seeking benefits under Section 1132(a)(1)(B) bears the burden of proving entitlement to benefits. Muniz v. Amec Const. Mgmt., Inc., 623 F.3d 1290, 1294 (9th Cir. 2010). Here, as discussed below, Plaintiff is not entitled to recover any further benefits under Section 1132(a)(1)(B).

   **1.    Plaintiff's Claim for Benefits Is Timely**

       **a.    Applicable Law**

"There is no specific federal statute of limitations governing claims for benefits under an ERISA plan." Wetzel v. Lou Ehlers Cadillac Grp. Long Term Disability Ins. Program, 222 F.3d 643, 646 (9th Cir. 2000). Thus, in the absence of a contractual limitations provision, courts "look to the most analogous state statute of limitations" to determine the length of the limitations period. Id. In California, the statute of limitations for an ERISA action to recover benefits is four years. Wise v. Verizon Commc'ns, Inc., 600 F.3d 1180, 1186 (9th Cir. 2010) (quoting Wetzel, 222 F.3d at 648).

Parties may, however, "agree by contract to a particular limitations period, even one that starts to run before the cause of action accrues, as long as the period is reasonable" and not barred by a controlling statute. Heimeshoff v. Hartford Life & Acc. Ins. Co., 571 U.S. 99, 106, 108 (2013) ("The principle that contractual limitations provisions ordinarily should be enforced as written is especially appropriate when enforcing an ERISA plan."). For a contractual limitation period to be enforceable, it must provide the claimant sufficient notice. White v. Jacobs Eng'g Grp. Long Term Disability Benefit Plan, 896 F.2d 344, 350 (9th Cir. 1989) ("When a benefits termination notice fails to explain the proper steps for appeal, the plan's time bar is not triggered.").

Section 503 of ERISA requires "adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied" and "afford[s] a reasonable opportunity . . . for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133. The regulations promulgated under Section 503 accordingly require a plan administrator to provide "written or electronic notification of any adverse benefit determination" that includes a "description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action . . . following an adverse benefit determination on review." 29 C.F.R. § 2560.503-1(g)(1)(iv).

### b.  Analysis

The parties agree that, under the contractual limitations period of the Plan, the instant action must be filed within "three years after the time written proof is required to be furnished." Dkt. 67-1 at 104. Thus, Plaintiff must have filed the instant action by November 28, 2022[8] to be timely. Id. Accordingly, Defendant argues because Plaintiff did not file the lawsuit until January 27, 2023, the action is barred by the contractual limitations period. Id. Plaintiff, however, contends "Defendant's contractual limitations defense is waived[,]" because Defendant failed to provide the required notice. Dkt. 79 at 20.

"The Ninth Circuit has not yet addressed whether [29 C.F.R. § 2560.503-1(g)(1)(iv) ("Paragraph (g)")] requires a plan administrator to include a plan's time limits on bringing a civil action in its denials." Zink v. St. Luke's Health Sys., Ltd., No. 1:22-CV-00359-AKB, 2023 WL 5748158, at *4 (D. Idaho Sept. 6, 2023). However, "[a]t least three circuit courts have addressed whether [Paragraph (g)] requires an initial denial of benefits to provide notice of a plan's contractual limitation on bringing a civil action," and "[a]ll of them have held the plain language of [P]aragraph (g) requires such notification." Id.; see Santana-Diaz v. Metro. Life Ins. Co., 816 F.3d 172, 180 (1st Cir. 2016) ("Based on the plain language of the regulation, we hold that the correct interpretation of [Paragraph (g)] is that a denial of benefits letter must include notice of the plan-imposed time limit for filing a civil action."); Mirza v. Ins. Adm'r of Am., Inc., 800 F.3d 129, 136 (3d Cir. 2015) ("[Paragraph (g)] requires that adverse benefit determinations set forth any plan-imposed time limit for seeking judicial review," and thus, "[w]ithout this time limit, a notification is not in substantial compliance with ERISA."); Moyer v. Metro. Life Ins. Co., 762 F.3d 503, 507 (6th Cir. 2014) ("The exclusion of the judicial review time limits from the adverse benefit determination letter was inconsistent with ensuring a fair opportunity for review and rendered the letter not in substantial compliance.").

Considering the plain language of the regulation, the Court finds the three-year contractual limitation was not triggered because the EOBs and October 16, 2019 and December 10, 2019 letters informing Plaintiff Defendant would not be paying the full amount billed by Medical Providers did not include notice of the plan-imposed time limit for filing a civil action as required by Paragraph (g). See White v. Jacobs Eng'g Grp. Long Term Disability Benefit Plan, 896 F.2d 344, 350 (9th Cir. 1989) ("When a benefits termination notice fails to explain the proper steps for appeal, the plan's time bar is not triggered."); dkt. 67-2 at 260-269, 296-304, 459, 461. Hence, in the absence of a

---

[8] Under the terms of the Plan, written proof is due 90 days after the date of a covered loss. Dkt. 67-1 at 85. Here, 90 days after Plaintiff's medical procedure was November 28, 2019.

contractual limitations period, California's four-year statute of limitation period applies. See Wise, 600 F.3d at 1186.

Here, Plaintiff received the relevant medical care on August 30, 2019, and filed the instant action on January 27, 2023. Dkt. 1-1. Thus, Plaintiff filed the instant action well before the expiration of California's statute of limitations. Accordingly, Plaintiff's claim is not time-barred.

**2.      Plaintiff's Claim Is Not Barred by a Failure to Exhaust Administrative Remedies**

   **a.      Applicable Law**

As a general matter, "an ERISA plaintiff claiming a denial of benefits 'must avail himself or herself of a plan's own internal review procedures before bringing suit in federal court.'" Vaught v. Scottsdale Healthcare Corp. Health Plan, 546 F.3d 620, 626 (9th Cir. 2008) (quoting Diaz v. United Agric. Employee Welfare Benefit Plan & Trust, 50 F.3d 1478, 1483 (9th Cir. 1995)). "[W]hether a claimant must exhaust her claims depends on the terms of the operative plan." Dragu v. Motion Picture Indus. Health Plan for Active Participants, 144 F. Supp. 3d 1097, 1112 (N.D. Cal. 2015).

   **b.      Analysis**

Here, the Plan does not require Plaintiff file an appeal before filing the instant action. Rather, the plain language of the Plan provides if a covered individual receives an Adverse Benefits Determination, the individual "may file a formal appeal." Dkt. 67-1 at 87 (emphasis added). Thus, although Plaintiff had the option of filing an appeal, nothing in the Plan required Plaintiff to file an appeal as a condition precedent to pursuing litigation. While Defendant argues Plaintiff "provides no excuse for his failure to exhaust administrative remedies," dkt. 78 at 9, Defendant fails to point to any language in the Plan requiring Plaintiff to exhaust. See dkt. 67-2 at 12. Accordingly, Plaintiff's claim is not barred for failure to exhaust an administrative appeal provision.

**3.      The Court Reviews Plaintiff's Claim Under an Abuse of Discretion Standard**

   **a.      Applicable Law**

A claim of denial of benefits in an ERISA case is to be reviewed "under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Montour v. Hartford Life & Acc. Ins. Co., 588 F.3d 623, 629 (9th Cir. 2009). If the plan administrator or fiduciary has discretionary authority, "[t]he abuse-of-discretion standard is used to review a benefits decision[.]" Muniz v. Amec Const. Mgmt., Inc., 623 F.3d 1290, 1295 (9th Cir. 2010). "[A] plan grants discretion if the administrator has the 'power to construe disputed or doubtful terms' in the plan." Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 963 (9th Cir. 2006) (quoting Firestone, 489 U.S. at 111) (holding that a plan that has wording "granting the power to interpret plan terms and to make final benefits determinations [] confers discretion on the plan administrator").

///

        **b.**        **Analysis**

Here, the terms of the Plan give Defendant "discretionary authority to determine eligibility for benefits" and "to construe the terms of the [P]lan." Dkt. 67-1 at 170 ("[Defendant] ha[s] discretionary authority to interpret the terms of the Plan and to determine eligibility for benefits in accordance with the terms of the Plan."). Thus, the abuse of discretion standard of review applies.

While Plaintiff argues a de novo standard of review applies because the Plan's language permitting Defendant to exercise discretion is "void and unenforceable" under Section 10110.6 of the California Insurance Code, this argument fails. Dkt. 58 at 13. Plaintiff relies upon Section 10110.6, which states, "If a policy . . . that provides or funds life insurance or disability insurance coverage for any California resident contains a provision that reserves discretionary authority to the insurer . . . to determine eligibility for benefits or coverage, to interpret the terms of the policy . . . or to provide standards of interpretation or review that are inconsistent with the laws of this state, that provision is void and unenforceable." Cal. Ins. Code § 10110.6. Citing to Mahlon D. v. Cigna Health & Life Ins. Co., 291 F. Supp. 3d 1029, 1031 (N.D. Cal. 2018), Plaintiff argues that "health insurance is a form of disability insurance for purposes of the California Insurance Code," and thus, "the state ban on discretionary clauses applies" to the instant Plan. Dkt. 58 at 14.

Contrary to Plaintiff's claim, however, the language of Section 10110.6 is clear that it applies specifically to "life insurance or disability coverage." When "the language of the statute is clear and unambiguous, the statutory analysis ends." Viceroy Gold Corp. v. Aubry, 75 F.3d 482, 490 (9th Cir. 1996); Dyna-Med, Inc. v. Fair Emp't & Hous. Com., 43 Cal. 3d 1379, 1386-87 (1987) (noting in applying a California statute, "a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose"). As the language in Section 10110.6 is clear, unambiguous, and specifically refers to "life insurance" and "disability coverage," the Court need not engage in any analysis beyond applying the plain language of the statute. See Delaney v. Superior Court, 50 Cal. 3d 785, 800 (1990)) ("When statutory language is thus clear and unambiguous there is no need for construction, and courts should not indulge in it." (internal citations omitted, emphasis in original)).

Thus, Section 10110.6's ban on discretionary language does not apply to the instant Plan, which provides specifically for health insurance benefits. Bain v. United Healthcare Inc., No. 15-CV-03305-EMC, 2016 WL 4529495, at *9 (N.D. Cal. Aug. 30, 2016) ("Because [plaintiffs] do not claim under a disability or life insurance policy, Section 10110.6 does not void the discretionary clause in the Plan."). The Court, therefore, applies an abuse of discretion standard to Plaintiff's claims.

**4.**        **Defendant Did Not Abuse Its Discretion in Its Payments to Medical Providers**

        **a.**        **Applicable Law**

Under an abuse of discretion standard, the plan administrator's "interpretation of Plan language is entitled to a high level of deference and will not be disturbed unless it is 'not grounded on any reasonable basis.'" Tapley v. Locs. 302 & 612 of Int'l Union of Operating Engineers-Emps. Const. Indus. Ret. Plan, 728 F.3d 1134, 1139 (9th Cir. 2013) (quoting Oster v. Barco of Cal. Emps.'

Ret. Plan, 869 F.2d 1215, 1218 (9th Cir. 1988)). "A plan administrator's decision to deny benefits must be upheld under the abuse of discretion standard if it is based upon a reasonable interpretation of the plan's terms and if it was made in good faith." McDaniel v. Chevron Corp., 203 F.3d 1099, 1113 (9th Cir. 2000).

"A plan administrator abuses their discretion where they 'construe provisions of a plan in a way that clearly conflicts with the plain language' of the Plan, 'renders nugatory' other provisions of the Plan, or 'lacks any rational nexus to the primary purpose' of the Plan." Tapley, 728 F.3d at 1140 (internal brackets and citations omitted). In interpreting Plan language, courts begin the "inquiry with the plain language of the Plan, interpreting it 'in an ordinary and popular sense as would a person of average intelligence and experience.'" Id. (quoting Gilliam v. Nev. Power Co., 488 F.3d 1189, 1194 (9th Cir. 2007) (alteration and internal quotation marks omitted)).

"[A]n insurer that acts as both the plan administrator and the funding source for benefits operates under . . . a structural conflict of interest." Abatie, 458 F.3d at 965 (citing Tremain v. Bell Indus., Inc., 196 F.3d 970, 976 (9th Cir. 1999). "[I]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" Id. (quoting Firestone, 489 U.S. at 115).

  b.  Analysis

Here, Defendant did not abuse its discretion in declining to further reimburse Medical Providers to cover the balance billed to Plaintiff. Defendant paid Medical Providers in accordance with their reimbursement policies identified in the Plan and in an amount that was permitted by law. Under the terms of the Plan, Defendant is required to reimburse for "Eligible Expenses." Dkt. 67-1 at 13. "Eligible Expenses" are defined under the Plan as "an amount negotiated by [Defendant] or an amount permitted by law." Id. at 28. Defendant is not obligated to "pay excessive charges or amounts [a covered individual is] not legally obligated to pay," or Benefits for any "[c]harges in excess of Eligible Expenses[.]" Id. at 28, 74.

There is no evidence in the record Defendant "'construe[d] provisions of [the Plan] in a way that clearly conflicts with the plain language' of the Plan, 'renders nugatory' other provisions of the Plan, or 'lacks any rational nexus to the primary purpose' of the Plan." Tapley, 728 F.3d at 1140. The Court acknowledges a structural conflict of interest exists because Defendant is "both the plan administrator and the funding source for benefits." Abatie, 458 F.3d at 965. However, even weighing this conflict of interest, Plaintiff fails to provide any evidence to establish Defendant's claims determination was not "grounded on any reasonable basis." Id.

To the extent Plaintiff argues Defendant abused its discretion because Defendant did not comply with the terms of the Plan by failing to "negotiate an amount to pay" or "pay[] an amount permitted by law," these arguments fail. Dkt. 58 at 15, 16.

First, with respect to Plaintiff's argument Defendant did not comply with the terms of the Plan because it failed to "negotiate an amount to pay," based on the plain language of the Plan, Eligible Expenses are to be reimbursed at "an amount negotiated by [Defendant] or an amount permitted by law." Dkt. 67-1 at 28. Thus, so long as the amount reimbursed was "an amount permitted by law," under the terms of the Plan, Defendant was under no obligation to negotiate

with Medical Providers.[9]  See Talbot v. UnitedHealthcare Ins. Co., No. 2:23-CV-06137-SB-PVCx, 2024 WL 847960, at *6 (C.D. Cal. Feb. 16, 2024) (finding no obligation to negotiate where the Plan language contains "no affirmative requirement to negotiate").

Second, with respect to Plaintiff's argument Defendant did not "pay an amount permitted by law," because "[u]nder the Department of Managed Health Care's [("DMHC")] regulations," the insurer is "obligated to pay the reasonable and customary rate for the services," this argument also fails.  Dkt. 58 at 16 (citing Prospect Med. Grp., Inc. v. Northridge Emergency Med. Grp., 45 Cal. 4th 497, 507 (2009); Bell v. Blue Cross of Cal., 131 Cal. App. 4th 211, 216 (2005)).  As stated in the Plan, the Plan is regulated by the California Department of Insurance, not the DMHC.  Dkt. 67-1 at 33; see also Smith v. PacifiCare Behavioral Health of Cal., Inc., 113 Cal. Rptr. 2d 140, 154-55 (Ct. App. 2001) ("[T]he Legislature has elected to subject insurers and health care service plans to distinct regulatory regimes.  Insurers are regulated by the Insurance Code and the Insurance Commissioner.  Health care service plans fall under the jurisdiction of the Department of Managed Care and the Knox-Keene Act."[10] (emphasis omitted)); Namdy Consulting, Inc. v. UnitedHealthcare Ins. Co., No. CV 18-01283-RSWL-KSx, 2018 WL 6430119, at *3 (C.D. Cal. July 11, 2018) (same); Cal. Ins. Code § 791.02(k) ("'Insurance institution' shall not include . . . health care service plans regulated pursuant to the Knox-Keene Health Care Service Plan Act[.]").  Thus, the regulations and requirements under the DMHC are inapplicable here.  With respect to regulations under the California Department of Insurance, Plaintiff has failed to present any evidence Defendant's reimbursements to Medical Providers were impermissible.  Further, Plaintiff has not raised any argument calling into question the reimbursement policies, including the OCM Program, used by Defendant.

Likewise, to the extent Plaintiff argues Defendant violated its obligations under the terms of the Plan because it did not "offer to pay an amount so as to prevent Plaintiff from being billed more than Plaintiff's coinsurance, copayment or deductible," Plaintiff fails to present any evidence the plain language of the Plan required Defendant to make such an offer.  Dkt. 58 at 18-19.  As discussed above, Defendant had no obligation to negotiate an amount to pay Medical Providers.  Further, Plaintiff fails to identify any language in the Plan requiring Defendant to resolve Plaintiff's medical bills with Medical Providers to prevent Plaintiff from being billed more than Plaintiff's coinsurance, copayment, or deductible.  To the contrary, the Plan specifies Defendant will not pay

---

[9] While Plaintiff also argues the Plan's definition of Eligible Expenses is ambiguous, dkt. 58 at 19, Plaintiff fails to identify how the Plan language creates "two or more constructions, both of which are reasonable."  Int'l Bhd. of Teamsters v. NASA Servs., Inc., 957 F.3d 1038, 1044 (9th Cir. 2020) ("A [contract] provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable."); BA LAX, LLC v. Hartford Fire Ins. Co., 519 F. Supp. 3d 711, 715 (C.D. Cal. 2021), aff'd, No. 21-55109, 2022 WL 12338549 (9th Cir. Oct. 21, 2022) ("[Courts] will not strain to create an ambiguity where none exists[.]").

[10] The Knox-Keene Act "is a comprehensive system of licensing and regulation under the jurisdiction of the Department of Managed Health Care . . . intended to govern health care service plans and specialized health service plan contracts."  Keith Feder, M.D., Inc. v. Aetna Life Ins. Co., No. 2:23-CV-07-026-JLS-JPRx, 2024 WL 1641987, at *2 (C.D. Cal. Mar. 4, 2024) (internal citation omitted); Cal. Health & Safety Code § 1343(a).

for any "[c]harges in excess of Eligible Expenses," which are the "amount negotiated by [Defendant] or an amount permitted by law." Dkt. 67-1 at 28, 64, 74.

Lastly, Plaintiff appears to argue that because there is no evidence in the record that the amounts billed were excessive, Defendant should be obligated under the terms of the Plan to pay the total cost of Medical Providers' claims. Dkt. 58 at 19. However, Plaintiff misconstrues the terms of the Plan. The Plan instructs Covered Individuals to contact Defendant "if [they] are billed for amounts in excess of [their] Coinsurance, Copayment or any deductible." Dkt. 67-1 at 28. It further states Defendants "will not pay excessive charges or amounts [the covered individual] is not legally obligated to pay." Id. Plaintiff fails to identify any language in the Plan in which Defendant agrees to cover all claims so long as the amount billed is not excessive. Moreover, to the extent Plaintiff claims this language renders the Plan ambiguous, this argument is without merit. Rather, the language regarding excessive charges is consistent with the Plan's definition of "Eligible Expenses" as "an amount negotiated by [Defendant] or an amount permitted by law." Id.

Ultimately, Plaintiff has failed to present any evidence Defendant abused its discretion in failing to pay Medical Providers more than what was already provided. Accordingly, Plaintiff is not entitled to recover any further benefits under Section 1132(a)(1)(B).

## IV.
## CONCLUSION

For the reasons set forth above, Defendant's Motion for Judgment is **GRANTED** and Plaintiff's Motion for Judgment is **DENIED**. (JS-6)

**IT IS SO ORDERED.**